UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THE ONTARIO REGIMENT (RCAC) COMPANY and ALAN DUFFY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NUMBER: 1:17 CV 00367 ) |
| DEAN V. KRUSE FOUNDATION, INC. | ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiffs, The Ontario Regiment (RCAC) Company and Alan Duffy (individually herein, "the Museum" and "Duffy"), purchased at auction and sight unseen, what they wrongfully assumed to be two authentic World War II military vehicles from Defendant, Dean V. Kruse Foundation, Inc. ("the Foundation"). Thereafter, the Plaintiffs filed this suit[1] invoking the diversity jurisdiction of this Court alleging, among other things, that the purchased vehicles are not authentic and the Foundation violated Indiana law by committing common-law fraud, criminal fraud, and criminal deception. Presently before the Court are cross-motions for summary judgment [DE 35 and DE 43] and two motions to strike [DE 42 and DE 54]. For the following reasons, the Foundation's Motion for Summary Judgment will be GRANTED. All the remaining motions will be DENIED.

**APPLICABLE STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.*

---

[1] Initially, the original Complaint contained only the Museum as a plaintiff. [DE 1]. Subsequently, an Amended Complaint was filed naming both the Museum and Duffy. [DE 33].

1

56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). "Parties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.*

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.' " *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual

disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255. Mindful of these standards, the Court turns now to the facts of the case.

## FACTUAL BACKGROUND

### I. The Parties

The Museum is a registered and accredited Canadian Armed Forces Museum and a non-profit entity with principal offices located in Oshawa, Ontario, Canada. (Declaration of Alan Duffy at ¶2, hereinafter,"Duffy Dec. at ___"). The Museum maintains Canada's largest collection of operational military vehicles and artifacts related to the history and development of the Ontario Regiment. (*Id.* At ¶3). Duffy is the president of the Museum. Duffy has purchased a number of military vehicles and armaments on the Museum's behalf. (DE 41 at p. 3).

The Foundation operates the National Military History Center (formerly known as the World War II Victory Museum) in Dekalb County, Indiana. The National Military History Center is a federally recognized 501(c)(3) non-profit institution. (Duffy Dec. at ¶4).

### II. The Vehicles

As noted, this case involves two World War II military vehicles: a 1943-44/Opel/Maultier Panzer-Werfer 42 ("the Opel") and a 1944/Panzer Jager 38(t) MIT7.5 cm PAK AUSF M ("the Marder"). Originally, the Victory Memorial Museum in Belgium recovered these vehicles along with other vehicles from World War II Battlefields. (Victory Memorial Museum Book ("the Book"), Exhibit 35-2 at pp. 5-13, 144, 160). The Book provides details as to how these damaged vehicles were restored through reconstruction efforts. (*Id.*). The Book is the subject of a Motion to Strike [DE 42] which will be addressed in the Discussion portion of this Order.

In the mid-1990s, Dean V. Kruse ("Kruse") purchased the Opel and Marder in the same lot with a number of other military vehicles from the Victory Memorial Museum in Belgium.

(Affidavit of Dean V. Kruse, at ¶3, hereafter "Kruse Aff. at p. ___"). There were no specific price allocations for the individual military vehicles in the lot; rather, Kruse paid approximately $2.3 million total for the lot. (*Id.* at ¶4). Kruse avers that no restorations/changes were made to the Opel or the Marder since Kruse purchased the vehicles. (*Id.* at ¶7). As a result, he asserts these vehicles are the same vehicles he purchased from the Victory Memorial Museum.

### III. Pre-Auction Advertising and the Auction

The Foundation listed the two vehicles for auction to be held between May 11-13, 2017 ("the Auction").[2] Approximately one month prior to the Auction, Duffy received notice that Auctions America would be conducting the auction. (Duffy Dec. at ¶7). The Foundation has sold more than $3 million dollars in vehicles through Auctions America, the majority of which were German military vehicles. (Kruse Aff. ¶12). Auctions America has not received any complaints or grievances with respect to any of the Foundation's prior auctions. (*Id.* at ¶17; Letter from Auction's America, Exh. 5H).

As the auctioneer, Auctions America prepares the descriptions for the vehicles, takes photos of the vehicles, estimates values for the vehicles, and prepares the advertising materials that appear in print and online. (Kruse Aff. ¶9-¶11; Affidavit of Records Custodian, John Sulman, Exhs. 5, 5B and 5C; Declaration of Matthew Lynch at ¶6: "AA took photographs of the Opel and Marder, and prepared the advertising materials distributed…").

Matthew Lynch ("Lynch"), the Catalogue Coordinator for AA, avers that he was responsible for writing various catalogue descriptions for items auctioned at the Auction. (Lynch Dec. at ¶s 3-4). He further avers that he wrote the descriptions for "one item described as a 1943-

---

[2] There is a minor dispute in the briefs as to the date of the auction. One brief references it as May 12, 2017 while the other states it was May 15, 2017. This factual dispute is irrelevant to the outcome of the pending motions since all parties agree there was an auction around or about mid-May, 2017.

4

44 Opel Maultier Panzer-Werfer 42 … and one item described as a 1944 Panzer Jager 38(t) Mit 7.5 CM Pack Ausf M …" (*Id.*). Lynch states that the descriptions of the Opel and Marder were taken from the Kruse Foundation placards that were posted in front of the Opel and Marder in the National Military History Center. (*Id.* at ¶6). Lynch physically inspected the vehicles and noted that there was no engine or transmission in either vehicle. As a result, he added "NO ENGINE OR TRANSMISSION" to the text. In addition, at the request of his superior, Lynch included this sentence: "Buyer could source and utilize period engine and transmission or even late model diesel engine and transmission to get in running order." (*Id.*).

Duffy avers that he registered for the Auction online and it is undisputed that the registration information submitted for the Museum at the Auction is accurate. (Duffy Dec. ¶8; Pltfs Response to Admissions, Nos. 20-21). Duffy states that he carefully reviewed the photographs and descriptions of the items and eventually focused on the Opel and the Marder as well as a third item that is not the subject of this lawsuit. (Duffy Dec. ¶8). Duffy did not direct any questions to the Foundation or to Auctions America regarding the condition, authenticity or any other fact relating to either the Opel or the Marder. (Kruse Dec. ¶14).

The Foundation represents that the both the Opel and Marder were auctioned pursuant to a "Bidder's Conditions of Business and Buyer's Guide." (Sulman Aff. Exhs 5 and 5D). These conditions contained the following provision for both the Opel and the Marder: "All sales are 'As Is' and 'Where Is.' The Bidder is responsible for inspections and verification of condition, authenticity and completeness of any lot purchased." (*Id.*). Duffy avers that although he reviewed photographs and item descriptions on the Auctions America website, he has no recollection of seeing these conditions stated anywhere prior to his purchase of the two vehicles. (Duffy Dec. ¶8).

Duffy participated in the auction by telephone. Duffy did not personally inspect either the Opel or the Marder prior to bidding. (Duffy Dec. ¶9). This was contrary to his normal practice, "[m]y customary practice is to inspect historic military items before purchasing the items." (*Id.*). He averred that he typically inspects the items in person or through a representative but did not do so in this case because the items were being offered by the National Military History Center. (*Id.*). He believed they were "museum quality" items. (*Id.*).

Duffy won the auctions for both the Opel and the Marder. His winning bids were $41,000 for the Opel and $210,000 for the Marder. In the Acknowledgment of Purchase for both vehicles, the signatory represents, "I have purchased the goods described above relying entirely upon my own examination thereof … I acknowledge that all sales are 'as is' and 'where is' with no warranties or representations of any type whatsoever." (Sulman Aff. Exhibit 5D).

Duffy avers that he did not sign either the Acknowledgement of Purchase or the Bills of Sale for the Opel and the Marder. (Duffy Dec. at ¶8). He further indicates "someone else must have signed these documents" and that he is unfamiliar with the signature. (*Id.*).[3]

### IV. <u>Alleged Misrepresentations</u>

After the sale, Duffy arranged to have the vehicles shipped to the Museum. (Duffy Dec. at ¶s11, 15). Upon their arrival, Duffy inspected the items and states he was "shocked at the inconsistencies between the advertisement and reality." (*Id.* at ¶11). With respect to the Opel, Duffy asserts seven different misrepresentations between the advertising materials and the item he purchased. For instance, Duffy states that the advertising materials represented "Armor: Superstructure front, sides and rear: 8mm, Hull front, sides and rear: 8mm, Top and bottom: 6mm," yet he avers that there is no real armor plate on the vehicle. (*Id.*). Rather, "[s]teel plate is used in

---

[3] Neither side offers any suggestion as to who signed the documents.

the entire fabrication of vehicle." (*Id. at* ¶11(D)). In another example, Duffy discusses the armament advertised in the materials which stated, "Armament: One 15cm, 8 barreled Nebelwerfer rocket launcher mounted on an armoured swivel mount." (*Id.*). In fact, Duffy avers:

> The 'rocket launcher' mounted on the vehicle was fabricated out of post-war contemporary components. The 'launcher' is fixed to a mount on the vehicle that looks like an original swivel mount but it is actually a solid structure and does not swivel or change elevation. It is completely incapable of launching rockets, and it does not swivel.

(Duffy Dec. at ¶11(E)). In addition to these alleged misrepresentations, Duffy also notes that the manufacturer, production year, and warning in the materials that the ATF approval is required before transport are all false. Likewise, he asserts that other portions of the advertising is misleading. In conclusion, Duffy notes that "the Opel is a fabrication worth little or nothing to a real museum." (*Id.* at ¶13).

As for the Marder, Duffy describes this item as a "self-propelled gun" and states that the item he purchased "is a fabrication worth little or nothing to a real museum." (*Id.* at ¶s 14, 15). He then goes on in his affidavit to detail the alleged misrepresentations made in the advertising materials related to the Marder. As with the Opel, Duffy maintains that the armor and armaments or misrepresented, as are the manufacturer, production year and ATF warning. (*Id.* at ¶15 (A) – (G)).

The Foundation asserts that a reasonable observer reviewing the photographs that were part of the advertising materials for both the Opel and Marder demonstrate that the Opel and Marder were not originals nor were they represented as original World War II vehicles. To support this position, the Foundation designates reports attached to Plaintiffs' Complaint by Sam Richardson ("Richardson"), the Assistant Curator of the Museum[4] wherein he makes "Authenticity Findings"

---

[4] Oddly, Defendant designated this evidence in its Motion for Summary Judgment and refers to Richardson as "Plaintiffs' expert." Defendant does not challenge his reports, his findings or the

as to both the Opel and the Marder. Richardson states that Opels came equipped with a machine gun mounted on the roof of the drivers cab and that "no Pazerwerfers … ever came mounted with searchlights…" (DE 1, Exh. D). Photographs featured on the AA website before and during the Auction show that the Opel did not have a machine gun mounted on the roof of the vehicle. (DE 35-5 Exh. D). Similarly, these same photographs show that the Opel had a searchlight mounted on the roof of the vehicle. Richardson also indicated that original Opels' track wheels took the form of a solid metal disc with four evenly spaced holes. In contrast, the photographs featured on the AA website show that the Opel had four wheels with black curved spokes.

With respect to the Marder, Richardson makes findings which, again, the Foundation asserts are belied by the photographs provided by AA before and during the Auction. Thus, the Foundation asserts the photos accurately represented the vehicles purchased by Plaintiffs and clearly demonstrated that the vehicles were not original. The Foundation further notes that Duffy acknowledges he reviewed the photographs prior to bidding on the vehicles.

V. **Prior Auctions Listing the Opel and the Marder**

Plaintiffs supplemented their Motion for Summary Judgment with the submission of the Affidavit of Michael John Fuller [DE 48-1], which is the subject of a Motion to Strike by the Foundation. Fuller holds himself out as a dealer of World War II memorabilia and acknowledges that the Opel and Marder were purchased in a collection of vehicles by Kruse from the Victory Memorial Museum. (Affidavit of Michael John Fuller at ¶3, hereafter "Fuller Aff. at ¶____." Fuller also provides props to the movie and television industry. (*Id.* at ¶5).

---

foundation for them. Rather, the Defendant offers the reports to demonstrate that it was unreasonable for the Plaintiffs to rely on the photos of the Opel and the Marder to establish authenticity since the photos clearly show that the Opel and Marder are not originals.

Fuller avers that Victory Memorial Museum "had a number of authentic pieces, and also manufactured some pieces to look like German vehicles." (*Id.*). Fuller goes on to aver that "[a]lthough officials at the Kruse World War II Victory Museum may not have known the Opel and Marder were replicas at the time the Opel and Marder were purchased with the rest of the collection, they most certainly learned that the Opel and Marder were replicas well before May, 2017." (*Id.*). He states that "the replicas were pretty easy to identify when inspected up close because they were constructed in Belgium relatively quickly from parts taken from post World War II vehicles." (*Id.* at ¶3)

Fuller maintains that the Opel and the Marder were offered at a prior auction by the Foundation held in 2012. (Fuller Aff. at ¶4). He does not aver that he attended the auction although his statements imply that he was in attendance. He states that of the items offered at the 2012 auction, "in general, the Allied memorabilia from World War II was legitimate, and the German memorabilia was not." (*Id.*). He states that bidders attending the 2012 auction "were able to inspect the vehicles up close, and many quickly concluded that most of the German vehicles were not legitimate." (*Id.*). Because they were not authentic, he avers that neither the Opel or Marder sold at this auction.

Fuller also states that he saw the Marder advertised for sale on eBay in July, 2016, for a starting price of $75,000 by an individual named Ryan Jernigan of 326 Auctions, located in Auburn, IN. (Fuller Aff. at ¶5). He avers that he contacted Jernigan and learned the Opel was also for sale. (*Id.*). Fuller states that after receiving photographs of the Opel and Marder he was "able to confirm that there were very few, if any, authentic pieces on the Opel or Marder." (*Id.*). He then made offers on both the Opel and Marder reflecting that they were not authentic pieces but was hopeful to purchase them for use as movie props. He avers that Jernigan communicated

9

the offers to the Foundation as well as the fact that they were replicas and the Foundation rejected Fuller's offers. (*Id.*).

Finally, Fuller avers that he saw that AA had included the Opel and Marder in the Auction at issue in this in May, 2017. (*Id.*). He contacted the Foundation and AA to advise them that the Opel and Marder were complete replicas, and that the advertising materials were misleading. (*Id.*). Additionally, he sent an email to AA dated April 29, 2017, wherein he repeated his assertions that the Opel and Marder were not authentic. (*Id.*).

## **DISCUSSION**

As set forth at the outset, in addition to the cross-motions for summary judgment both sides have filed Motions to Strike various evidentiary designations submitted in support of their respective positions.[5]

### I. **Plaintiffs' Motion [DE 42]**

The Plaintiffs seek to strike two items proffered by the Foundation in support of its Motion for Summary Judgment. First, the Plaintiffs object to the Foundation's proffer of the Victory Memorial Museum Book ("the Book") attached to the Kruse Affidavit and identified as DE 35-2. Plaintiffs assert that the Book is hearsay when cited by the Foundation in support of its statements that the recovered vehicles "were restored through reconstruction efforts" and recovered from WWII battlefields, both of which the Plaintiffs assert are false. Plaintiffs further assert that the Book does not fall within the hearsay exception for statements in learned treatises, periodicals, or pamphlets contained in Fed.R.Evid. 803(18) and thus, should be stricken.

---

[5] These motions are addressed in cursory fashion at this summary judgment phase since the outcome of these motions has little to no bearing on the Court's decision.

In response, the Foundation's contentions are two-fold. First, it argues that the Book falls within the hearsay exception for ancient documents in Fed.R.Evid. 803(16). That exception provides that "a statement in a document that was prepared before January 1, 1998, and whose authenticity is established" is not hearsay. Here, the Foundation notes that the Book was published on May 19,1991 by the Victory Memorial Museum in Belgium following the assembly of the World War II battlefield vehicles. Kruse avers that he received the Book at the time he purchased the vehicles and was kept in the National Military History Center as a resource. (Kruse Aff. at ¶6).

Second, the Foundation asserts that the Book is not offered for the purpose of proving the truth of the matter asserted. Instead, it is offered to show Kruse's knowledge of the items he received from the Victory Memorial Museum and his reasonable reliance on the Book's description of the vehicles at the time of purchase.

The Court agrees with the Foundation that the Book qualifies for the hearsay exception in Fed.R.Evid. 803(16) with respect to the statements therein and, even if it did not, it would still be admissible to reflect Kruse's knowledge and his reasonable reliance on the description of the purchased vehicles. Accordingly, the Plaintiffs' Motion to Strike the Book is DENIED.

Next, the Plaintiffs object to Exhibits 5A-5H attached to the Affidavit of John Sulman which they contend "arguably" satisfy Fed.R.Evid. 803(6) but do not satisfy the authenticity requirements of Fed.R.Evid. 901.

This is much ado about nothing as the documents clearly fall within the hearsay exception for statements or records kept in the ordinary course of business. Sulman avers that he is the Records Custodian for AA, that he kept the records in the course of regularly conducted business, and the records were made in the routine course of business, at or near the time of the events

recorded. (Sulman Aff. ¶s 2-5). Moreover, Sulman identifies, in a letter authored by him and attached to his affidavit a list of all the Exhibits that the Plaintiffs now claim are unauthenticated.

Federal Rule of Evidence 901(a) provides that "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Here, the attached letter identifying the items in the Exhibits is sufficient for the Court and the Plaintiffs to glean what the items are. There is no true objection from the Plaintiffs that the items are not authentic or that the Exhibits are fabricated. Similarly, the Court is not relying on these Exhibits to deny summary judgment and thus, the issue is irrelevant to the analysis herein. Accordingly, this portion of the Motion to Strike is also DENIED.

## II. Defendant's Motion to Strike [DE 54]

Defendant seeks to strike the Fuller Affidavit [DE 48-1] contending that many of the statements contained therein are hearsay statements. Even a cursory review of the Fuller Affidavit clearly demonstrates that many of the statements contained therein are textbook hearsay. For instance, at ¶5: "Jernigan told me he explained to Kruse Foundation officials that both the Opel and Marder were replicas…" is without doubt an out of court statement by someone other than the declarant and offered for the truth of the matter asserted. Similarly, the statement in ¶4 that "I have learned that many who purchased German vehicles via the Internet from foreign countries were very disappointed in the quality of the vehicle when it was delivered," qualifies as a hearsay statement outside the personal knowledge of the declarant and offered for the truth of the statement.

More importantly, however, the Motion to Strike can be rendered moot for a number of reasons. First, the evidentiary intent of the Fuller Affidavit is to demonstrate that the Foundation knew the Opel and Marder are not authentic and to demonstrate their knowledge of the fact prior

12

to the Auction at issue in this case. The problem for the Plaintiffs in offering this affidavit, however, is that the Foundation is not contesting the vehicles' authenticity. In fact, the Foundation concedes in its brief that the condition of the Marder and Opel were "clearly visible" and "available to all bidders through either pictures or the naked eye." (Defendant's Brief [DE 37], at pp. 10-11). Similarly, it states that there was "no representation by the [Foundation] that the Opel was completely original…Being an 'original' is virtually impossible for a war vehicle recovered from a battlefield. The vehicle was, of course, subject to restoration." (*Id.* at p. 11 and 12 (referring to the Marder). Thus, to the extent, the Fuller Affidavit is intended to establish knowledge by the Foundation that the vehicles were not authentic, the Fuller Affidavit does not contain any evidentiary value or relevant information. Moreover, the Fuller Affidavit actually supports this Court's grant of summary judgment as discussed later in this Opinion and Order for it bolsters the argument that the vehicles, in Fuller's words, were "pretty easy to identify" (Fuller Aff. at ¶3), as replicas thereby calling into question whether the Plaintiffs exercised due diligence prior to bidding on the items. Accordingly, the Motion to Strike is DENIED as MOOT.

**III.    Motions for Summary Judgment**

As set forth earlier, the parties have filed competing motions for summary judgment asserting that there are no genuine issues of material fact as to the claims in this case and that each respective party is entitled to judgment as a matter of law. Specifically, the Foundation asserts that there is no question of fact as to whether it made misrepresentations to the Plaintiffs since it did not create the advertising materials for the Opel and the Marder. Moreover, the Foundation argues that the facts are undisputed that the Plaintiffs did not direct any inquiries to the Foundation regarding the condition or authenticity of the Opel and the Marder and thus, no representations were made directly by the Foundation to them. Alternatively, the Foundation asserts that even if

13

the representations in the advertising materials are imputed to it, the Plaintiffs were advised prior to bidding and at the time the Bill of Sale and Acknowledgements were signed that the vehicles were sold "as is" and the bidder is "responsible for inspections and verification of condition, authenticity and completeness of any lot purchased." As part and parcel of this argument is the Foundation's assertion that there is no evidence that it intended to defraud the Plaintiffs so as to support any of their claims.

Contrary to these claims, the Plaintiffs contend that that under the contractual arrangement between AA and the Foundation, the Foundation was under a duty to review and notify AA of any inaccuracies in the catalog descriptions of the vehicles. Thus, the representations in the advertising materials drafted by AA can be imputed to the Foundation since it had an obligation to review and correct any misrepresentations. As for intent, the Plaintiffs appear to contend a sort of "fraud *per se*" in that the Court should infer from the fact and extent of the misrepresentations alone that the Foundation had intent to defraud. The court turns now to these arguments as they relate to the individual claims in this case.

### I. Common Law Fraud

For the Plaintiffs to prevail on their common law fraud claim, they must demonstrate an absence of a fact issue as to whether the Foundation made "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013). "Fraud is not limited only to affirmative representations; the failure to disclose all material facts can also constitute actionable fraud. *Id.* In particular, "[w]hen a buyer makes inquiries about the condition, qualities, or characteristics of

property," the seller must "fully declare any and all problems associated with the subject of the inquiry," or else risk liability for fraud. *Id.* (citing *Lawson v. Hale*, 902 N.E.2d 267, 275 (Ind. Ct. App. 2009) ). *Boots v. D. Young Chevrolet, LLC,* 93 N.E.3d 793, 799 (Ind. Ct. App.), <u>transfer denied,</u> 102 N.E.3d 287 (Ind. 2018).

Here, the Foundation asserts it did not make any misrepresentations to the Plaintiffs and did not misrepresent the Opel or Marder at all. The Foundation concedes that the Opel and Marder are not original WWII vehicles as evidenced by its statement in its briefs that there was "no representation by the [Foundation] that the Opel was completely original…Being an 'original' is virtually impossible for a war vehicle recovered from a battlefield. The vehicle was, of course, subject to restoration." (DE 37 at p. 11 and 12 (referring to the Marder). That said, it is equally clear from a review of the marketing materials that the Foundation did not affirmatively represent the Opel and Marder overtly as "original" World War II memorabilia. The record is likewise clear that AA drafted the advertising materials and took the photographs of the items. Thus, the Foundation contends that no issue of fact exists that it made any misrepresentations to support the Plaintiffs' fraud claims.

In response, Plaintiffs' argument is two-fold. First, they argue that by calling the Opel an Opel and the Marder a Marder in the advertising materials, the Foundation misrepresented or implied that they were "original" vehicles. Indeed, Plaintiffs argue "[a]t the most basic level, the Opel is described as an Opel, and the Marder is described as a Marder. The Opel is not described as a fabricated Opel, and the Marder is not described as a fabricated Marder." (Plaintiffs' Brief [DE 41], at p. 15). Second, they argue that because AA's contract with the Foundation provides the Foundation with the opportunity to review the descriptions of the items and obligates them to

15

correct any erroneous information, the representations made in the advertising materials can be imputed to the Foundation.

Fortunately, the Court needn't parse through the statements in the various advertising materials or sift through the list of alleged misrepresentations set forth by the Plaintiffs to determine whether the Foundation made direct or implied misrepresentations because even if the statements in the advertising materials are attributable to the Foundation, the Plaintiffs cannot meet their burden of demonstrating a genuine issue of material fact as to the remaining elements of fraud.

An intent to deceive is an essential element of actual fraud. *Kapoor v. Dybwad*, 49 N.E.3d 108, 124 (Ind. Ct. App. 2015). "To obtain summary judgment, [plaintiff] must also demonstrate that the undisputed facts show that [the defendant] acted with the requisite *mens rea*—the specific intent to defraud." *Klinker v. First Merchants Bank, N.A.,* 964 N.E.2d 190, 194 (Ind. 2012). Here, the record is void of any facts suggesting that the Foundation intended to deceive the Plaintiffs or that the Foundation represented the Opel and Marder as original vehicles as opposed to refabricated vehicles. As the Foundation points out, the photographs in the advertising materials depict items on the Opel and Marder that would clearly indicate to a knowledgeable purchaser that these vehicles were not original or at the very least cause a reasonably prudent bidder to inquire further. Yet, despite the photograph depictions that are at odds with their contention that the Foundation represented the Opel and Marder as originals, Plaintiffs did not make any inquiries, and did not inspect the items prior to bidding or send an agent to do so on their behalf. Rather, the Plaintiffs made assumptions regarding the "museum quality" of the pieces without making any inquiries.[6]

---

[6] Duffy asserted he believed the pieces to be of "museum standards" as defined by the American Alliance of Museums ("AAM"). However, neither the National Military History Center nor its predecessor WWII Victory Museum has ever been an accredited member of the AAM.

Even the Plaintiffs' own evidence suggests that the condition and authenticity of the Opel and the Marder were "pretty easy to identify." (Fuller Aff. at ¶3). In that same affidavit, Fuller references a prior auction and indicates that prospective bidders who inspected the vehicles "quickly concluded" that the vehicles were not legitimate. Simply stated, there exists no evidence in the record from which a jury might infer "intent to deceive" by the Foundation, especially when the condition of the vehicles was not only available to all bidders for inspection but also depicted in the photographic evidence. As a result, the Foundation is entitled to summary judgment on the common law fraud claim.

If this were not enough, however, "a person relying upon the representations of another is bound to exercise ordinary care and diligence to guard against fraud." *Plymale v. Upright*, 419 N.E.2d 756, 761–62 (Ind. Ct. App. 1981). Indeed,

> The legal obligation that a person exercise the common sense and judgment of which he is possessed is a practical limitation on the actionability of various representations. In the course of daily interaction and business dealing the average person encounters a barrage of opinions, advice, advertisements, estimates, and even "guestimates." He simply cannot believe, or rely upon, everything he is told.

*Id. at 762*. Here, Plaintiffs' own Assistant Curator represents, by virtue of his "Authenticity Findings reports," some degree of expertise in this area and Duffy was required to exercise care and diligence when reviewing the photographs and descriptions to avoid fraud. Instead, Duffy, who holds himself out as a sophisticated purchaser by virtue of his position as President of the Museum that has "Canada's largest collection of operational military vehicles and artifacts related to the history and development of the Ontario Regiment" (Duffy Dec. at ¶3), admittedly chose not to make inquiries, not to consult his Assistant Curator, and not to inspect the vehicles or send someone else to do so. (Duffy Dec. at ¶9: "My customary practice is to inspect historic military

17

items before purchasing the items. I typically do that either in person, or I have a representative do it. I did not do that in this case…"

There is also no evidentiary foundation suggesting that the Foundation discouraged or prevented Duffy from inspecting the vehicles or that it ignored inquiries made by Duffy so as to thwart the discovery of the vehicles' condition. Rather the Auction website contained language in the Bidders Condition of Sale clearly placing the burden of inspection, "verification of condition, authenticity and completeness" on the Plaintiffs. Duffy asserts that he did not "see" the Bidders Condition of Sale on the auction website (and did not sign the Bills of Sale for either vehicle which contained the same language as well as the "as-is" disclaimer), he presents no evidence raising a genuine issue of fact that this language was not on the website (only that he did not see it). Duffy averred that he has purchased a number of military vehicles and armaments on the Museum's behalf, some by auction. (Duffy Dec. at ¶3). Common sense dictates that a reasonably prudent bidder would exercise care to review the Bidders Condition of Sale on an auction website prior to bidding.

Accordingly, where, as here, "the evidence is so clear as to be susceptible of only one reasonable inference, it is for the court to determine as a matter of law whether plaintiff was justified in relying on the representation and whether he was negligent in doing so." *Plymale*, 419 N.E.2d at 763. The Court concludes it was not. The Defendants' Motion for Summary Judgment is GRANTED as to the common law fraud claim and the Plaintiffs' Cross-Motion for Summary Judgment is DENIED.

II. **Criminal Fraud, Ind. Code § 35–43–5–4(8) (2017) and Criminal Deception, Ind. Code §35-43-5-3(A)(2) and (9) (2017)**

For many of the same reasons that the common law fraud claim fails, Plaintiffs' claims for criminal fraud and deception likewise fail as a matter of law. Ind.Code § 35–43–5–4(8) provides

18

that a person who "with intent to defraud the person's creditor or purchaser, conceals, encumbers, or transfers property" commits fraud, a class D felony. All elements of the alleged fraud, including the requisite criminal intent, must be proven by a preponderance of the evidence. *See Palmer Dodge, Inc. v. Long,* 791 N.E.2d 788, 791 (Ind.Ct.App.2003) (victim seeking relief for damages arising out of criminal conversion must prove by a preponderance of the evidence all elements of the alleged criminal conversion, including the requisite criminal intent). The essential element of criminal fraud is the intent to defraud. Likewise, criminal deception under I.C. 35–43–5–3(a)(2) requires proof that a person knowingly or intentionally made a false or misleading *written* statement with intent to obtain property. Here too, "intent" is a critical element:

> A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35–41–2–2(a). Although "defraud" is not defined by statute, it is a familiar legal term dating to the fourteenth century meaning "[t]o cause injury or loss to (a person) by deceit." *Black's Law Dictionary* 488 (9th ed. 2009). Thus, summary judgment is proper only if the undisputed facts show that, when [the defendant] made the challenged transfers, his conscious objective was to cause injury or loss to FMB by deceit.

Klinker v. First Merchants Bank, N.A., 964 N.E.2d 190, 194 (Ind. 2012). As described above, the record lacks evidence from which a jury could infer that the Foundation *knew* or had a *conscious objective* to defraud. As a result, the Plaintiffs' claims fail as a matter of law. The Defendants' Motion for Summary Judgment is GRANTED as to the criminal fraud and deception claims and the Plaintiffs' Cross-Motion for Summary Judgment is DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion for Summary Judgment [DE 35] is GRANTED. The Plaintiffs' Cross-Motion for Summary Judgment is DENIED [DE 43]. The

Motions to Strike are DENIED [DE 42 and DE 54]. The Clerk is directed to enter judgment in favor of the Defendant.

Entered: This 10th day of April, 2019

s/ William C. Lee<br>
United States District Court